**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36545**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2011 Opinion No. 12 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: March 25, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ABELARDO DOMINGUEZ GOMEZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Thomas J. Ryan, District Judge.

Order imposing restitution for costs of prosecution and investigation, vacated.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Deborah A. Whipple argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

_____

SCHWARTZMAN, Judge Pro Tem

Abelardo Dominguez Gomez appeals from the restitution order for costs of prosecution and investigation entered upon his guilty plea to conspiracy to traffic in cocaine and two counts of trafficking in cocaine. We vacate said order.

**I.**

**FACTS AND PROCEDURE**

Following a six-month investigation which included several controlled buys where Gomez sold almost eight pounds of cocaine to a confidential informant, Gomez was charged with one count of conspiracy to traffic in cocaine, Idaho Code §§ 18-1701, 37-2732B(a)(2), 37-2732B(b), and eleven counts of trafficking in cocaine, I.C. § 37-2732B(a)(2).

At a status conference, the parties informed the court they had reached a plea agreement whereby Gomez would plead guilty to conspiracy to traffic in cocaine and two counts of trafficking in cocaine. The parties further agreed to an eight-year determinate sentence for each

1

count, with the indeterminate portion left open for argument. The sentences were to run concurrently with each other and with a prior felony possession charge, and no additional federal or state charges would be filed. A "Conditional Plea of Guilty Pursuant to Idaho Criminal Rule 11 and Binding Plea Agreement" was signed by Gomez, his attorney, and the prosecutor, and was submitted to the court at the change of plea hearing. It made no reference to the issue of restitution. Gomez also completed a "Guilty Plea Advisory" form wherein he acknowledged, among other things, his understanding of the terms of the plea agreement that was attached to the form, that the agreement was binding if accepted by the court, and that if the district court did not impose the agreed upon sentences he would be allowed to withdraw his plea and proceed to a jury trial. In addition, he answered "no" to the question of whether he was aware that if he pled guilty he may be required to pay restitution to any other party as a condition of the plea agreement, but answered "yes" to the question of whether he was pleading guilty to a crime for which he "may be required" to pay the costs of prosecution and investigation pursuant to "I.C. § 37-2732A(K)."[1]

With neither party nor the court mentioning the issue of restitution, the court accepted Gomez's guilty pleas pursuant to the plea agreement. At the subsequent sentencing hearing, the state first expressed its intention to make a restitution request which would include the approximately $57,000 of buy money Gomez received from the confidential informant. The court also indicated its understanding that the state would need time to submit a written restitution request. Gomez's attorney did not object to the implication that restitution would be imposed or offer any indication that the request was unexpected. The court imposed concurrent unified sentences of twenty-five years with eight years determinate on each of the three counts and again indicated that the state would be submitting an order of restitution, but that if there were a dispute as to the amount there would be a forty-two-day window in which Gomez could request a restitution hearing. A formal written "Judgment and Commitment" issued by the court nine days later reflected the terms of imprisonment, ordered Gomez to pay the minimum fine of

---

[1]     It appears that the advisory form contained a typographical error as the correct citation is Idaho Code § 37-2732(k).

$15,000 on each of the three counts,[2] and ordered "restitution pursuant to the restitution order." Approximately three weeks later, the district court entered an order pursuant to I.C. § 37-2732, requiring Gomez to pay, jointly and severally with his co-defendant father, the costs incurred by law enforcement which totaled approximately $130,000, $51,500 of which was unrecovered buy money. The order also stated that within forty-two days of the entry of the order of restitution, Gomez could object to or request relief from the order in accordance with the Idaho Rules of Civil Procedure. Gomez did not object to the order, request a restitution hearing, or move to withdraw his plea. He did, however, formally file a timely pro se notice of appeal, contending the restitution order constituted a breach of the plea agreement.

## II.

## ANALYSIS

Gomez contends that the entry of the restitution order was a breach of the binding Rule 11 plea agreement he entered with the state and therefore, the restitution order must be vacated. The state counters that because Gomez did not object to the prosecutor's request for restitution for costs of investigation at the sentencing hearing, he did not preserve this claim for appeal and that even if he did, the state's request for restitution did not breach the plea agreement.

Generally, Idaho's appellate courts will not consider error not preserved for appeal through an objection at trial. *State v. Perry*, 150 Idaho 209, 245 P.3d 961, 976 (2010); *State v. Johnson*, 126 Idaho 892, 896, 894 P.2d 125, 129 (1995). This limitation on appellate court authority serves to induce the timely raising of claims and objections, which gives the trial court the opportunity to consider and resolve them. *Puckett v. United States*, ___ U.S. ___, ___, 129 S. Ct. 1423, 1428 (2009); *Perry*, 150 Idaho at 214, 245 P.3d at 976. Ordinarily, the trial court is in the best position to determine the relevant facts and to adjudicate the dispute. In the case of an actual or invited procedural error, the trial court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome. *Perry*, 150 Idaho at 214, 245 P.3d at 976. However, every defendant has a Fourteenth Amendment right to due process and it is axiomatic

---

[2]      We note that the "Judgment and Commitment" contains an error in that it states the total fine imposed as $54,000. However, imposition of $15,000 on each of the three counts equals a fine of $45,000. This may be corrected pursuant to Idaho Criminal Rule 36 which allows for corrections of clerical mistakes in judgments arising from oversight or omission "at any time."

that a fair trial in a fair tribunal is a basic requirement of due process. Accordingly, when an error has not been properly preserved for appeal through objection at trial, the appellate court's authority to remedy that error is strictly circumscribed to cases where the error results in the defendant being deprived of his or her Fourteenth Amendment due process right to a fair trial in a fair tribunal. *Id. See also State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007).

In *Perry*, our Supreme Court stated the analysis which applies in cases of unobjected-to error:

> (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*Id.* at 226, 245 P.3d at 978 (footnote omitted).

Accordingly, in determining whether we may address the issue on appeal, we first examine whether Gomez has demonstrated that the alleged plea bargain breach implicated an unwaived constitutional right. Idaho appellate courts have repeatedly recognized that the United States Supreme Court's decision in *Santobello v. New York*, 404 U.S. 257, 262 (1971), establishes that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled. *See State v. Peterson*, 148 Idaho 593, 595, 226 P.3d 535, 537 (2010); *State v. Halbesleben*, 147 Idaho 161, 165, 206 P.3d 867, 871 (Ct. App. 2009); *State v. Jones*, 139 Idaho 299, 301, 77 P.3d 988, 990 (Ct. App. 2003); *State v. Doe*, 138 Idaho 409, 410, 64 P.3d 335, 336 (Ct. App. 2003). We have recognized that this principle is derived from the Due Process Clause and the fundamental rule that, to be valid, a guilty plea must be both voluntary and intelligent. *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984); *Halbesleben*, 147 Idaho at 165, 206 P.3d at 871; *State v. Rutherford*, 107 Idaho 910, 913, 693 P.2d 1112, 1115 (Ct. App. 1985). Thus, it is apparent that the breach of a plea agreement implicates a defendant's constitutional rights such that the first prong of our fundamental error analysis is satisfied.[3]

---

[3]  In *State v. Mosqueda*, ___ Idaho ___, ___ P.3d ___ (Ct. App. Dec. 30, 2010) *rev. pending*, this Court recently held that a challenge to a restitution order could not be raised for the

4

We next address whether Gomez has carried his burden to show clear error in that the state allegedly breached the plea agreement by requesting restitution where no mention of restitution was contained in the agreement *or* at the plea hearing.  Because plea agreements are contractual in nature, they generally are examined by courts in accordance with contract law standards.  *Doe*, 138 Idaho at 410, 64 P.3d at 336; *State v. Fuhriman*, 137 Idaho 741, 744, 52 P.3d 886, 889 (Ct. App. 2002).  *See also Puckett*, ___ U.S. at ___, 129 S.Ct. at 1430.  ("[P]lea bargains are essentially contracts.  When the consideration for a contract fails--this is, when one of the exchanged promises is not kept . . . we say that the contract was broken.")  In determining whether the state has breached a plea agreement a court must examine the language of the plea agreement, and where the language of that plea agreement is ambiguous, those ambiguities shall be resolved in favor of the defendant.  *Peterson*, 148 Idaho at 595, 226 P.3d at 537; *Fuhriman*, 137 Idaho at 745, 52 P.3d at 890.  The burden of proving the existence of a contract and the fact of its breach is upon the moving party.  *Peterson*, 148 Idaho at 595, 226 P.3d at 537.  Focusing on the defendant's reasonable understanding also reflects the proper constitutional focus on what induced the defendant to plead guilty.  *Id*. at 596, 226 P.3d at 538.  Contractual terms that are implied by the plea agreement, as well as those expressly provided, must be considered by the court.  *Doe*, 138 Idaho at 410-11, 64 P.3d at 336-37.

The *Santobello* principle that the state must assiduously adhere to terms of a plea bargain is grounded in the Due Process Clause and the well-established rule that, to be valid, a guilty plea must be both voluntary and intelligent.  *Mabry*, 467 U.S. at 508-09; *Doe*, 138 Idaho at 410, 64 P.3d at 336; *Rutherford*, 107 Idaho at 913, 693 P.2d at 1115.  If the prosecution breaches a promise made in a plea agreement, the defendant pleads guilty on a false premise and is entitled to relief.  *Mabry*, 467 U.S. at 509; *Doe*, 138 Idaho at 410, 64 P.3d at 336; *State v. Seaman*, 125 Idaho 955, 957, 877 P.2d 926, 928 (Ct. App. 1994).

Idaho Criminal Rule 11(c) requires that before a plea is accepted, the defendant must be informed of the consequences of the plea, including minimum and maximum punishments, and

---

first time on appeal because restitution proceedings are essentially civil in nature and the fundamental error doctrine may not be invoked.  The fact that Gomez is claiming a due process violation through breach of a plea agreement, rather than simply making a direct challenge to the restitution order, distinguishes this case from *Mosqueda*.

5

"other direct consequences which may apply." In *State v. Banuelos*, 124 Idaho 569, 573, 861 P.2d 1234, 1238 (Ct. App. 1993), this Court concluded that restitution is a direct consequence of pleading guilty and therefore, a sentencing court may not impose restitution upon a defendant who pleaded guilty unless the defendant was advised of that possibility prior to entry of the plea. In *Doe*, we addressed the issue of whether the state had breached a plea agreement by requesting restitution where the plea agreement was silent on the issue. We held that:

> [w]here neither the plea agreement nor the court accepting the plea has apprised the defendant of the possibility that he may be ordered to make restitution, the prosecutor may not request restitution after the defendant pleaded guilty in reliance upon the agreement. *See United States v. Kamer*, 781 F.2d 1380, 1388-89 (9th Cir. 1986) (holding that written plea agreement which failed to mention restitution contained implied term that government would not request order of restitution); *State v. O'Connor*, 146 Ariz. 16, 703 P.2d 563, 565-66 (Ct. App. 1985) (holding that prosecutor breached plea agreement by seeking order of restitution where neither plea agreement nor sentencing court informed defendant that restitution might be imposed).

*Id.* at 411, 64 P.3d at 337. We noted that the state's agreement to an informal adjustment of the charge, along with various other conditions specified in the agreement, implied that the state would not request any additional consequences for Doe. Therefore, it was a breach of the plea agreement when the state requested an order of restitution *after* Doe had pleaded guilty in reliance on the agreement.[4] *Id.*

In the instant case, it is clear that restitution was not included in the plea bargain. The parties took care to document the agreement in written form and there was no mention of restitution either in the written agreement or in discussions on the record surrounding the plea and its terms. The issue was not raised until after Gomez had entered the plea--at the sentencing

---

[4]     Unlike this case where restitution was ordered pursuant to Idaho Code § 37-2732(k), which allows a court to order restitution for the costs incurred by law enforcement agencies in investigating a violation of, among other things, the Uniform Controlled Substances Act, the restitution in *Doe* was presumably ordered pursuant to I.C. § 19-5304 which allows for courts to award restitution to crime victims for the amount of their "economic loss" attributable to the crime. We conclude, however, that the plea agreement principles in relation to restitution orders contained in *Doe* remain applicable to this case. *See also Banuelos*, 124 Idaho 569, 861 P.2d 1234. Thus, the analytical framework regarding the effect of a restitution order that constitutes a breach of the plea agreement should be consistent in regard to restitution orders under both statutes.

6

hearing during which the state first made a direct reference to the fact that it would be requesting restitution, but did not indicate a precise amount.

The state relies on language in the plea advisory form wherein Gomez acknowledged that he was pleading guilty to a charge for which he "may be required" to pay for the costs of prosecution and investigation. We conclude that this oblique reference was insufficient to put Gomez on notice that $130,000 in restitution would be part of the plea agreement. An examination of the form indicates that he also answered he was pleading guilty pursuant to a plea agreement, the terms of which were contained in the attached written agreement and which, as indicated above, contained no reference to restitution.[5] In short, such notice does not equate to acknowledgement that restitution was part of the plea agreement. We therefore hold that where there exists a written plea agreement which does not mention the issue of restitution and where the defendant was not otherwise clearly informed on the record that restitution is part of the agreement, it is a breach of that agreement for the state to seek restitution.

We now examine the appropriate remedy for the breach. Gomez contends we should simply vacate the restitution order, leaving the plea agreement in place. The state, however, contends that the appropriate remedy is to allow Gomez to withdraw his guilty plea, thus starting the process anew and, we observe, creating the possibility that Gomez could face harsher sentences as well as a restitution award which the state would undoubtedly take care to explicitly include in any subsequent agreement. We note that the state argues for this remedy even where it is the party that has breached the agreement.

When a plea agreement has been violated by the prosecution, as a remedy the court may order specific performance of the agreement or may permit the defendant to withdraw the guilty plea. *Santobello*, 404 U.S. at 263; *Doe*, 138 Idaho at 411, 64 P.3d at 337; *State v. Horkley,* 125 Idaho 860, 865, 876 P.2d 142, 147 (Ct. App. 1994). In *Doe*, we examined whether specific performance or withdrawal of the guilty plea was appropriate, stating:

> Here, it is undisputed that Doe has performed the required community service, written the essay on self-defense, and otherwise complied with the terms of the original judgment, and the State has received the benefit of its bargain. It would therefore be unjust to merely allow Doe to withdraw his guilty plea and face the

---

[5] The plea advisory form also advised that the defendant may be subject to consecutive sentences and up to life imprisonment, terms which clearly conflict with the written Rule 11 plea agreement.

7

> possibility of being tried and resentenced for the same offense. A remedy of specific performance, on the other hand, will hold the State to its agreement, give Doe the terms that he bargained for, and bring this case to an end. Accordingly, we reverse the order for restitution but do not otherwise disturb the judgment of conviction.

*Id.* at 411, 64 P.3d at 337. *See also Peterson*, 148 Idaho at 597, 226 P.3d at 539 (after determining that court's interpretation of plea agreement was erroneous, ordering specific performance rather than withdrawal of the plea); *Banuelos*, 124 Idaho at 573, 861 P.2d at 1238 (having determined that defendant's plea was otherwise voluntarily and intelligently made, concluding that appropriate remedy for failure to advise defendant of the possibility of restitution was to strike the restitution order).

In this case, allowing the state to start over with a blank slate where it was the breaching party--thus leaving Gomez to face the possibility of being tried and resentenced more harshly for the same offenses--would be unjust. On the other hand, vacating the restitution order and leaving the plea agreement in place would give each party the terms they bargained for and bring the case to a merciful resolution. Accordingly, we vacate the order for restitution but do not otherwise disturb the judgment of conviction.

Judge LANSING and Judge MELANSON **CONCUR.**